UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THOMAS YUEN and SUMNI AHN, Individually and on Behalf of All Others Similarly Situated, | : : : | CIVIL ACTION NO. 2010-1467 |
| | : | CLASS ACTION |
| Plaintiffs, vs. | : : : | SECTION: "R" |
| | : | JUDGE SARAH S. VANCE |
| TRANSOCEAN LTD. and STEVEN L. NEWMAN, | : : : | MAGISTRATE: "1" MAGISTRATE SALLY SHUSHAN |
| Defendants. | : : | JURY DEMAND |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
JOHNSON INVESTMENT COUNSEL, INC. FOR APPOINTMENT AS LEAD
<u>PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 3 |
| III. | JOHNSON INVESTMENT IS THE MOST ADEQUATE PLAINTIFF | 5 |
| | A. Johnson Investment Filed the Complaint and Timely Filed This Motion. | 6 |
| | B. Johnson Investment Has the Largest Financial Interest in the Relief Sought. | 7 |
| | C. Johnson Investment Meets the Requirements of Fed. R. Civ. P. 23. | 8 |
| IV. | JOHNSON INVESTMENT'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED | 11 |
| V. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**

*Albert Fadem Trust v. Citigroup, Inc.*,
    239 F.Supp.2d 344 (S.D.N.Y. 2002)..................................................8

*Constance Sczensy Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004)......................................................9

*Ferrari v. Impath, Inc.*,
    No. 03CIV5667, 2004 WL 1637053 (S.D.N.Y. July 20, 2004)................2, 8, 11

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006)...................................................6, 9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    MDL No. 1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003)....................7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002)........................................................7, 11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................11

*In re Donnkenny Inc. Sec. Litig.*,
    171 F.R.D. 156 (S.D.N.Y. 1997).....................................................11

*In re Drexel Burnham Lambert Group*,
    960 F.2d 285 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993)..............9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998).................................................8, 9, 11

*In re Symbol Techs., Inc. Sec. Litig.*,
    No. 5-CV-3923, 2004 WL 1120619 (E.D.N.Y. April 26, 2006)..............9

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999).............................................................9

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004)...................................................7, 10

*Tarica v. McDermott International, Inc.*,
    No. Civ.A.99-3831, 2000 WL 377817 (E.D. La. Apr. 13, 2000)..............9

*Thompson v. The Shaw Group, Inc.*,
    No. CIV.A.04-1685, 2004 WL 2988503 (E.D. La. Dec. 14, 2004)..................6, 7, 9, 11

*Xianglin Shi v. Sina Corp.*,
    No. 05 Civ. 2154, 2005 WL 1561438 (S.D.N.Y. July 1, 2005)...............................7

**Statutes**

15 U.S.C. § 78u-4(a)(3)..................................................................................5

15 U.S.C. §§ 78u-4(a)(3)(A).............................................................................5

15 U.S.C. §78u-4(a)(3)(A)(i)............................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(ii)..........................................................................5

15 U.S.C. § 78u-4(a)(3)(B)...........................................................................1, 5

15 U.S.C. § 78u-4(a)(3)(B)(i).........................................................................2, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii).........................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)....................................................................2, 6

15 U.S.C. § 78u-$(a)(3)(B)(iii)(I)(cc)..................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(v)..........................................................................11

Fed. R. Civ. P. 23(a).......................................................................................8

**Miscellaneous**

H.R. Conf. Rept. No. 104-369, 104th Cong. 1st Sess. (1995),
    *as reprinted in* 1995 U.S.C.C.A.N. 730, 733.......................................................11

I.   **INTRODUCTION**

This securities class action against Transocean Ltd. ("Transocean" or the "Company") and its current Chief Executive Officer, Steven L. Newman, was brought on behalf of the purchasers of the publicly traded common stock of Transocean from August 5, 2009 through May 7, 2010 (the "Class Period"), who purchased the stock at artificially inflated prices and were damaged thereby (the "Class").[1]  The complaint alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 by making materially false and/or misleading statements and material omissions during the Class Period regarding, among other things, Transocean's safety protocols, safety measures and safety record.  Transocean is the world's largest offshore drilling contractor and the leading international provider of drilling management services for oil and gas wells.  Defendants' misconduct led to the worst environmental disaster in U.S. history after the explosion and sinking of the ultra-deepwater oil drilling rig called *Deepwater Horizon* in the Gulf of Mexico on April 20, 2010, and caused millions of dollars of losses to members of the Class.

Pursuant to §21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Johnson Investment Counsel, Inc. ("Johnson Investment") respectfully moves

---

[1] A securities fraud class action alleging similar claims and allegations was filed by Johnson Investment Counsel, Inc. against Transocean Ltd., Steven L. Newman and Robert A. Long (former CEO) in the U.S. District Court, Southern District of New York (*Johnson Investment Counsel, Inc. v. Transocean Ltd., et al.*, Civil Action No. 10-CV-04515, U.S. District Court, Southern District of New York) on June 8, 2010 (the "New York Action").  The class period in that case is a little longer - August 5, 2009 through June 1, 2010. Contemporaneous with this filing, Johnson Investment is also moving for appointment as lead plaintiff in the New York Action.

the Court for entry of an order: (i) appointing Johnson Investment as Lead Plaintiff in this action pursuant to the PSLRA; and (ii) approving its selection of Waite, Schneider, Bayless & Chesley Co., L.P.A. as Lead Counsel for Lead Plaintiff and the Class.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA provides a presumption that the person with the largest financial interest in the relief sought, who otherwise meets the requirements of Fed. R. Civ. P. 23, is the most adequate lead plaintiff in federal securities class actions. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Johnson Investment believes that it is the "most adequate plaintiff" under the PSLRA to serve as the Lead Plaintiff on behalf of the Class in this action because, as described in detail below, Johnson Investment suffered substantial losses in connection with its purchases of Transocean common stock during the Class Period and it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.[2] Further, Johnson Investment is a sophisticated institutional investor who is ready and able to stand for all other members of the Class and spearhead this litigation in the best interests of the Class.

Johnson Investment was founded in 1965 and has become the largest independent wealth management firm in the state of Ohio. Johnson Investment provides investment advisory services to clients in 45 states and manages more than $4.5 billion in assets for its clients. Johnson Investment is precisely the type of institutional investor that Congress sought to serve as lead plaintiff when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, No. 03CIV5667, 2004

---

[2] A copy of the PSLRA-required Certification setting forth the transactions by Johnson Investment in Transocean common stock during the Class Period is attached as Exh. A to the Declaration of James R. Cummins (the "Cummins Decl."), which is attached as Exhibit 1 hereto. Calculations of Johnson Investment's estimated losses in Transocean common stock purchased during the Class Period are attached as Exh. B to the Cummins Decl.

2

WL 1637053, at *3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in securities class actions and exercise control over the selection and actions of plaintiffs' counsel).

Finally, Johnson Investment has selected to serve as Lead Counsel a nationally known law firm that has extensive experience in securities fraud and other class action litigation.

For these reasons, and the reasons discussed below, Johnson Investment should be appointed Lead Plaintiff in this action and its choice of Lead Counsel should be approved.

## II.   FACTUAL BACKGROUND

Transocean, the world's largest offshore drilling contractor and the leading international provider of drilling management services for oil and gas wells, designed, owned, managed, operated and controlled the ultra-deepwater dynamic-positioned, semi-submersible mobile oil drilling rig called *Deepwater Horizon* (the "*Horizon*"). On April 20, 2010, explosion(s) on the *Horizon* caused a fire that severely damaged and eventually sunk the *Horizon*, which had been drilling on the outer Continental Shelf approximately 41 miles offshore from Louisiana. At the time of the explosion, unknown to the public, drilling was being conducted at depths of 22,000 to 25,000 feet – in violation of the maximum allowed by the permits issued by the Minerals Management Service ("MMS") bureau of the U.S. Department of the Interior.

As a result of the fire and the explosion on the *Horizon*, eleven crew members lost their lives, nine of whom were employees of Transocean. Additionally, the subsequent failure of the *Horizon's* safety mechanisms led to a massive oil spill and estimates are that over 100,000 barrels of crude oil are flowing from the damaged well **each day**. The disaster is the worst oil spill in history –surpassing that of the 1989 Exxon Valdez oil spill. The oil spill has caused serious and permanent environmental damage and Defendants' actions and fraud have subjected

the Company to significant liability, including current investigations by the U.S. Departments of Justice, Homeland Security and the Interior and various committees and subcommittees of Congress. The Company has also been subjected to over 100 civil lawsuits related to the catastrophic disaster.

During the last several years, Defendants were made aware of, but did not publicly disclose the full extent of, spills, fires and other serious incidents on the *Horizon*, which was issued citations for "acknowledged pollution source" by the U.S. Coast Guard some 18 times in the last 11 years. Defendants also did not publicly disclose that the blowout preventer ("BOP") on the *Horizon* was ten years old and had not been recalibrated, maintained, and/or tested appropriately, all of which violated federal requirements. Defendants were also apprised on several occasions of the serious hazards associated with Transocean's use of a type of BOP on ultra-deepwater drilling engagements. Despite all of this knowledge, during the Class Period, Defendants falsely represented to the investing public that Transocean had remedied its past safety problems, that the Company's BOP problems "have all been resolved," that BOP issues were "anomalies," and that the Company was closely monitoring its operating and equipment and conducting its operations in a safe and sound manner. Defendants failed to disclose material information concerning Transocean's repeated safety failures and recurring BOP issues and concealed that the Company had not in fact eliminated BOP issues or rectified the prior BOP failures.

Defendants' violations of federal securities laws have caused the Class to be damaged by purchasing Transocean common stock at artificially inflated prices during the Class Period and suffering losses when the price of Transocean's common stock substantially declined after the revelations of fraud - Transocean's deficient safety protocols, defective designs, and poor safety

and operating records. As a result of Defendants' false/misleading statements and material omissions, Transocean's common stock traded at artificially inflated prices during the Class Period, reaching a high of $94.88 per share on January 11, 2010. As the truth about the falsity of Defendants' previous statements and material omissions was absorbed by the market following the explosion and oil spill, Transocean shares fell to a closing at $50.04 per share on June 1, 2010 – a decline of nearly 48% from its Class Period high.

### III. JOHNSON INVESTMENT IS THE MOST ADEQUATE PLAINTIFF

The PSLRA established a procedure for the selection of a lead plaintiff to oversee class actions brought under federal securities laws. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the first federal securities class action must publish a notice, within 20 days of the filing, advising members of the purported plaintiff class (i) of the pendency of the action, the claims asserted therein, and the purported Class Period; and (ii) that, not later than 60 days after the date of the notice, any member of the purported class may move the Court to serve as lead plaintiff of the class. 15 U.S.C. §78u-4(a)(3)(A)(i).[3] In this first-filed action, the plaintiffs caused the required PSLRA notice to be published in *Business Wire*, a widely circulated national business-oriented wire service, on May 13, 2010.[4] Therefore, the deadline for filing motions for appointment as lead plaintiff in this action and the New York Action is July 12, 2010. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Next, the PSLRA directs that not later than 90 days after the date on which a notice is published, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims, the Court shall consider any motions

---

[3] "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)." 15 U.S.C. § 78u-4(a)(3)(A)(ii).
[4] A copy of that notice of pendency of the first-filed action is attached as Exh. C to the Cummins Decl.

5

brought by purported class members for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(B)(i) and (iii).

The PSLRA provides that the Court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to the notice of the action. . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Thompson v. The Shaw Group, Inc.*, No. CIV.A.04-1685, 2004 WL 2988503, at *4 (E.D. La. Dec. 14, 2004); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

Johnson Investment meets all of the PSLRA criteria and therefore is presumptively the most adequate lead plaintiff and should be appointed as lead plaintiff in the action.

### A. Johnson Investment Filed A Complaint and Timely Filed This Motion.

Johnson Investment filed the complaint in the New York Action. Further, Johnson Investment timely filed this motion for appointment as lead plaintiff in this action by the PSLRA deadline of July 12, 2010, as described above. Accordingly, Johnson Investment meets the first PSLRA criteria.

B. **Johnson Investment Has the Largest Financial Interest in the Relief Sought.**

During the Class Period, Johnson Investment purchased shares of Transocean as reflected in its Certification. The PSLRA does not state how to determine which plaintiff has the largest financial interest in the relief sought by the class. *Thompson*, 2004 WL 2988503, at *4; *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154, 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005); *see also Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 406-407 (S.D.N.Y. 2004) ("[I]n the absence of statutory guidance or Second Circuit case law, the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court.").

Lacking any direction from the PSLRA, courts generally look first to the losses each movant incurred from transactions in the subject security to identify the presumptive Lead Plaintiff:

> [T]he district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the presumptively most adequate plaintiff – and hence the presumptive lead plaintiff – the one who has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. The court should compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.

*Thompson*, 2004 WL 2988503, at *4; *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003), quoting *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (internal citations and quotations omitted).

During the longer class period in the New York Action, which is the most appropriate class period, in connection with its purchases of Transocean common stock, Johnson Investment suffered a loss of approximately $5,157,202 million using the first-in first-out ("FIFO")

methodology and a loss of approximately $3,385,560 million using the last-in first-out ("LIFO") methodology.[5]

While the substantial losses suffered by Johnson Investment are highly significant, as an institutional investor, Johnson Investment is also precisely the type of lead plaintiff Congress envisioned when it enacted the PSLRA, as described above. Courts have echoed this sentiment repeatedly. *See, e.g., Ferrari*, 2004 WL 1637053, at *3; *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (noting the PSLRA encourages institutional investors to take a role in securities class actions).

### C. Johnson Investment Meets the Requirements of Fed. R. Civ. P. 23.

Finally, Johnson Investment also meets the PSLRA requirement that the lead plaintiff must also otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F.Supp.2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, at the lead plaintiff stage, only a preliminary showing is required that Rule 23's requirements of typicality

---

[5] The average closing stock price changes each day, affecting the PSLRA damages. Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward. Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.

and adequacy are satisfied; examination of the remaining requirements should be deferred until the lead plaintiff moves for class certification. *See, e.g., Thompson*, 2004 WL 2988503, at *5; *Tarica v. McDermott International, Inc.*, No. CIV.A.99-3831, 2000 WL 377817, at *5 (E.D. La. Apr. 13, 2000); *In re Symbol Techs., Inc. Sec. Litig.*, No. 5-CV-3923, 2004 WL 1120619, at *2 (E.D.N.Y. April 26, 2006); *In re Oxford Health*, 182 F.R.D. at 49.

        1.      <u>Johnson Investment Fulfills the Typicality Requirement</u>. Typicality exists under Fed. R. Civ. P. 23(a)(3) "where the claims of the Lead Plaintiff arise [from] the same course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct." *Glauser*, 236 F.R.D. at 188-89; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) ("[The] test for typicality is not demanding. It focuses on similarity between the named plaintiffs' legal and remedial theories and the theories of those who they purport to represent."); *Tarica*, 2000 WL 377817, at *5 (Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."); *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993). However, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality. *See Constance Sczensy Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004); *Drexel*, 960 F.2d at 291.

Johnson Investment's claims are typical of the claims of the other members of the Class. Johnson Investment and all class members have identical, non-competing and non-conflicting interests in establishing defendants' liability. In sum, Johnson Investment satisfies the typicality requirement because, just like all other Class members: (i) it purchased Transocean common stock at artificially inflated prices during the Class Period and suffered damages thereby when

9

the truth was disclosed to the market, (ii) it relied upon the integrity of the market in such purchases, (iii) its claims arise from the same facts and alleged misrepresentations and omissions by defendants, and (iv) it has the same legal claims, *i.e.* that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

### 2. Johnson Investment Fulfills the Adequacy Requirement.

Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class." In order to meet the adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusions among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 413 (citation omitted).

Here, Johnson Investment's interests are perfectly aligned with the interests of the Class, and Johnson Investment has no interests antagonistic to those of the Class. Johnson Investment shares numerous common questions of law and fact with the members of the Class in establishing defendants' liability and damages, and its claims are typical of the Class. The substantial losses suffered by Johnson Investment provide it with ample incentive to maximize the recovery in this case and ensures it will vigorously pursue the action. Johnson Investment has submitted a Certification to the Court affirming that it is willing to serve as a representative party and understands its obligations associated with serving as lead plaintiff.[6] Johnson Investment, a sophisticated institutional investor, is also the prototypical lead plaintiff envisioned by the framers of the PSLRA. As noted by Congress in the Statement of Managers, the PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiff[]",

---

[6] *See* Cummins Decl., Exh. A.

in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rept. No. 104-369, 104th Cong. 1st Sess. 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733. Johnson Investment is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari*, 2004 WL 1637053, at *3; *see also In re Oxford Health*, 182 F.R.D. at 46. Johnson Investment has the requisite experience as a fiduciary to vigorously represent the class in prosecuting this litigation

Further, Johnson Investment has selected highly qualified and competent counsel who has significant experience in federal securities class actions and complex litigation.

IV.  **JOHNSON INVESTMENT'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001). Thus, Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rpt. No. 104-369, 104th Cong. 1st Sess. 35 (1995); *Thompson*, 2004 WL 2988503, at *7 ("Unless the Court detects a conflict between the proposed Lead Counsel and the class members, Lead Plaintiff's selection is presume to be proper."); *In re Cavanaugh*, 306 F.3d at 733 ("the district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.").

Johnson Investment has selected as Lead Counsel the firm of Waite, Schneider, Bayless & Chesley Co., L.P.A., which is highly experienced in the areas of securities class action

litigation and other complex class action litigation. Waite, Schneider has had a leading role in numerous important securities class actions on behalf of defrauded investors. *See* Waite Schneider Firm Biography, Cummins Decl., Exh. D. For example, the firm was Court-appointed Co-Lead Counsel for the class in a securities fraud class action against Freddie Mac and four of its former senior officers relating to the company's $5 billion financial restatement, and successfully obtained a $410 million cash settlement for the class (*In re Freddie Mac Securities Litigation*, Lead Case No. 03-CV-4261, U.S. District Court, S.D.N.Y.). Waite Schneider also serves as Lead Counsel for the class in a pending securities fraud class action against Fannie Mae and its former officers and auditors (*In Re Fannie Mae Securities Litigation,* MDL No. 1668, Consolidated Civil Action No. 04-cv-01639, U.S. District Court, District of Columbia) relating to Fannie Mae's $6.3 billion financial restatement, the largest financial restatement in U.S. history. Waite Schneider has also been appointed by a Court to serve as Co-Lead Counsel in the subprime securities fraud cause pending against Freddie Mae and certain of its former senior officers (*Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation, et al.*, Case No. 4:08-cv-160, U.S. District Court, Northern District of Ohio, Eastern Division).

## V. CONCLUSION

For the foregoing reasons, Johnson Investment respectfully requests that the Court: (a) appoint Johnson Investment as Lead Plaintiff in this action; and (b) approve its selection of Waite, Schneider, Bayless & Chesley Co., L.P.A. as Lead Counsel.

DATED: July 12, 2010                     Respectfully submitted,

/s/ Stanley M. Chesley
Stanley M. Chesley (Ohio Bar 0000852)
James R. Cummins (Ohio Bar 0000861)
W. B. Markovits (Ohio Bar 0018514)
Melanie S. Corwin (Ohio Bar 0046513)
Waite Schneider, Bayless & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375
E-mail: stanchesley@wsbclaw.com
*Counsel for Plaintiff and Proposed Lead Counsel for Proposed Lead Plaintiff Johnson Investment Counsel, Inc. and the Class*

/s/ Richard J. Arsenault
Richard J. Arsenault (LA Bar #02563)
Neblett, Beard & Arsenault
Post Office Box 1190
2220 Bonaventure Court
Alexandria, LA 71309-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2591
*Local Counsel*

OF COUNSEL:

Daniel E. Becnel Jr. (LA Bar #24567)
Law Offices of Daniel E. Becnel, Jr.
106 W. Seventh Street
P. O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445

W. Mark Lanier (TX Bar #11934600)
The Lanier Law Firm
6810 FM 1960 West
Houston, TX 77069
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

13

Jerrold S. Parker (NY Bar # 1894666)
Parker Waichman Alonso, LLP
6 Harbor Park Drive
Port Washington, NY 11050
Telephone: (516) 466-6500
Facsimile: (516) 466-6665

Camilo Salas, III (LA Bar #11657)
Salas & Co., L.C.
650 Poydras Street
Suite 1650
New Orleans, LA 70130
Telephone: (504) 799-3080
Facsimile: (504) 799-3085

34741

## CERTIFICATE OF SERVICE

      I certify that on July 12, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF, and service was accomplished on any party not registered through the CM/ECF system via regular U.S. mail.

                                    /s/ Richard J. Arsenault
                                    Richard J. Arsenault (LA Bar #02563)